IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEWELL OPERATING COMPANY, | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | Civil Action No.:  07 C 2996 |
| | ) | |
| v. | ) | Judge Hibbler |
| | ) | |
| VISION INDUSTRIES GROUP, INC., | ) | Magistrate Judge Valdez |
| | ) | |
| Defendant and Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERN & COMPANY, | ) | |
| | ) | |
| Counterclaim-Defendant. | | |

**EXHIBIT G TO NEWELL'S RESPONSE TO
VISION'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*Pursuant to Local Rules 5.8 and 26.2, this envelope contains
materials subject to a Stipulated Protective Order entered in this
action on January 16, 2008 (Docket No. 47).  It is not to be made
public, except by order of the Court.*

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT H

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| NEWELL OPERATING COMPANY, | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | No. 07 C 2996 |
| | ) | |
| VISION INDUSTRIES GROUP, INC., | ) | Judge Hibbler |
| | ) | |
| Defendant and Counterclaim-Plaintiff, | ) | Magistrate Judge Valdez |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| STERN & COMPANY, | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |

## <u>VISION'S RESPONSES TO NEWELL'S INTERROGATORIES (NOS. 1-16)</u>

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant and Counterclaim-Plaintiff Vision Industries Group, Inc. ("Vision") hereby respond to Plaintiff and Counterclaim-Defendant Newell Operating Company ("Newell") Interrogatories to Vision (Nos. 1-16) with the answers and objections set forth below. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, Vision reserves the right to supplement these responses to the extent it learns of additional responsive information not previously provided to Newell.

## GENERAL OBJECTIONS

1.      Vision objects to Newell's Interrogatories to Vision (Nos. 1-16) to the extent they seek information that is protected by the attorney-client privilege or the attorney work product immunity doctrine, or which is otherwise not subject to discovery by virtue of Rule 26(b)(3) of the Federal Rules of Civil Procedure.

2.      Vision objects to Newell's Interrogatories to Vision (Nos. 1-16) to the extent they purport to impose upon Vision duties and/or responsibilities greater than those imposed by the Federal Rules of Civil Procedure.

3.      Vision objects to Newell's Interrogatories to Vision (Nos. 1-16) to the extent they seek to limit the information that Vision may rely upon at trial in this matter.  Vision's fact investigation, discovery and trial preparations are continuing, and Vision reserves the right to provide additional information in response to these interrogatories.

4.      Vision objects to Newell's Interrogatories to Vision (Nos. 1-16) to the extent they seek information that is not reasonably calculated to lead to the discovery of admissible evidence.

5.      Vision objects to Newell's Interrogatories to Vision (Nos. 1-16) to the extent they attempt to circumvent Rule 33, as well as the Court's standing order, on the limit of interrogatories by including numerous sub-parts without identifying them as such.

* * *

The foregoing general objections are incorporated into and made part of Vision's response to each interrogatory.  Each of Vision's responses below is made without waiver or prejudice to these general objections.

## SPECIFIC OBJECTIONS AND RESPONSES

Vision's response or partial responses to any interrogatory is based on Vision's reasonable interpretation thereof and is not a waiver of any of its objections or its right to object to any additional, supplemental or further interrogatory, or any part thereof, but instead is offered in the spirit of cooperation and in an effort to avoid discovery disputes and/or delays.

> **INTERROGATORY NO. 1**:  State the factual basis for Defendant's contention that Defendant has not infringed and is not infringing the '291 patent, either literally or under the doctrine of equivalents, including, but not limited to, all facts that allegedly support such contention and the identify or all documents and things relating to such contentions.

**Vision's Response to Interrogatory No. 1:**

Vision objects to this interrogatory as unduly broad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent this interrogatory seeks non-literal infringement contentions on products that are not accused of infringement, products for which no infringement contentions have been provided, and/or claims that are not identified as being infringed.  Newell has identified claims 1, 3, 4, 7, 8 and 9 of the '291 patent as allegedly being infringed by an unspecified device depicted in a graphic attached to Newell's November 21, 2007 Responses to Vision's First Set of Interrogatories.  Vision further objects to this interrogatory as unduly broad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent this interrogatory seeks non-equivalent infringement contentions given that Newell has not articulated any theory of equivalent infringement.  Vision objects to this interrogatory as premature in that discovery relevant to claim construction issues (among other relevant matters) is ongoing.  Vision also objects to this interrogatory to the extent it seeks opinion testimony, which will be provided in accordance with the Court's scheduling order.

Subject to the foregoing objections, Vision presently responds based on its best information to date.

As an initial matter, claims 1, 3, 4, 7, 8 and 9 of the '291 patent are not infringed because those claims are invalid as set forth below in Vision's Response to Interrogatory No. 2.  An invalid claim cannot be infringed.  *See, e.g.*, *Leggett & Platt, Inc. v. CDP VUTEk, Inc.*, No. 4:05CV788 CDP, 2007 WL 2030134, *1 (E.D.Mo. July 9, 2007) ("No one can infringe an invalid patent claim") (citing *Schering Corp. v. Optical Radiation Corp.*, 867 F.2d 616 (Fed.Cir. 1989)).

Even if valid and enforceable, claims 1, 3, 4, 7, 8, and 9 would not be infringed by the accused Vision product for at least the reasons that follow.  Claims 1, 3 and 4 each require a pivot latch comprising:

> a housing having … a cover and pair of side walls depending from said cover, each of said ***side walls*** forming a ***longitudinal groove*** adapted to cooperatively receive a respective pair of said header rails….

Similarly, claims 7-9 require a pivot latch comprising:

> a housing having … a cover having longitudinal edges and a pair of side walls depending from said cover and disposed inward of said edges, each of said ***side walls having a side wall rail*** which cooperates with a respective on of said housing cover edges to form a ***longitudinal groove*** adapted to cooperatively receive a respective pair of said header rails.

Thus, all asserted claims require a "longitudinal groove" for receiving a header rail.  Claim 7 more specifically requires that such "longitudinal groove" be formed in part by a "side wall rail."

Asserted claims 1, 3, 4 and 7-9 would not be infringed by the accused Vision device because the accused device does not possess the claimed "longitudinal groove."  Moreover, claims 7-9 would not be infringed because the accused Vision device lacks a "side wall rail." Vision notes that Newell bears the burden of proving that the accused device meets each and

every claim element of the asserted patent claims, and thus, Vision's response herein provides non-exhaustive examples of claim elements that are lacking.

*First*, the accused Vision device lacks the required "longitudinal groove." The "longitudinal groove" required by the asserted claims is a continuous linear groove extending along the entire length of the side wall. The accused Vision device has a wave-shaped structure protruding from the side wall that is operative to make contact with, and cooperatively with the housing cover edges and side wall retain, a header rail. That wave-shaped structure does not form a groove along the entire length of the side wall as required by the "longitudinal groove" limitation of all asserted claims. Instead, contact between the wave-shaped protrusion and the header rail occurs at two points of negligible longitudinal dimension. Accordingly, the accused Vision device would not infringe any asserted claims.

*Second*, the accused Vision device does not have side wall "rails" as required by asserted claims 7-9. Newell contends that the term "rail" takes its "[p]lain and ordinary meaning." One having ordinary skill in the art would understand the term "rail" to mean in the context of the invention a "relatively long, evenly shaped structure." And, as noted above, the projections on the accused device are wave-shaped and cannot be said to be "evenly shaped," "relatively long" or otherwise constituting "rails." Accordingly, claims 7-9 would not be infringed for this separate and independent reason.

As noted above, discovery is ongoing, as is Vision's investigation into bases for non-infringement. Accordingly, Vision reserves its right to supplement or amend its response, as appropriate, in view of discovery taken in this case and otherwise in view of Vision's continuing investigation.

**INTERROGATORY NO. 2**:  State in detail the factual basis for Defendant's contention that the claims of the '291 Patent are invalid, including a description of such invalidity contentions on an element-by-element break-down of each such patent claim, with an identification of all facts and document or things that allegedly support such contention(s) and specific reference to the sections and statutory requirements of 35 U.S.C. §§ 1 *et seq.*, that Defendant contends is applicable.

**Vision's Response to Interrogatory No. 2:**

Vision objects to this interrogatory as unduly broad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent this interrogatory seeks invalidity contentions on claims other than the claims identified by Newell as allegedly infringed, *i.e.*, claims 1, 3, 4, 7, 8 and 9 of the '291 patent.  Vision objects to this interrogatory as premature in that discovery relevant to claim construction issues and prior art (among other relevant matters) is ongoing.  Vision also objects to this interrogatory to the extent it seeks opinion testimony, which will be provided in accordance with the Court's scheduling order.

Subject to the foregoing objections, Vision presently responds based on its best information to date.  If construed to cover a device such as the accused device (as Newell contends), then the asserted claims of the '291 patent are anticipated under 35 U.S.C. §102 and/or rendered obvious under 35 U.S.C. §103 by at least the prior art Ro-Mai latch referenced in the '291 patent itself.  As a reference point, the depiction of the prior art Ro-Mai latch used in a figure from Judge Schenkier's August 16, 1999 ruling in the *Ashland v. Ro-Mai* litigation is reproduced immediately below:



The asserted claims are anticipated and/or rendered obvious by the prior art Ro-Mai latch as

follows:

| Claim | Where Disclosed in the Prior Art |
|---|---|
| 1. For a pivotal window sash adapted for installation in a master frame of a sash window assembly having opposed, vertically extending guide rails to enable vertical reciprocal sliding movement of said sash window in said master frame while cooperatively engaged with said guide rails, said window sash having a top sash rail, a base and a pair of stiles cooperatively connected together at adjacent extremities thereof to form a rectangular sash frame, said top sash rail including a pair of opposing header slots, each of said header slots having a pair of opposing, longitudinal header rails, a pre-assembled pivot latch adapted for substantially flush installation in one of said header slots for releasably securing said window sash to said master frame to permit pivotal movement of said sash, said latch comprising: | The Ro-Mai latch is adapted for use with a pivotal window sash adapted for installation in a master frame of a sash window assembly having opposed, vertically extending guide rails to enable vertical reciprocal sliding movement of said sash window in said master frame while cooperatively engaged with said guide rails, said window sash having a top sash rail, a base and a pair of stiles cooperatively connected together at adjacent extremities thereof to form a rectangular sash frame, said top sash rail including a pair of opposing header slots, each of said header slots having a pair of opposing, longitudinal header rails, a pre-assembled pivot latch adapted for substantially flush installation in one of said header slots for releasably securing said window sash to said master frame to permit pivotal movement of said sash. |
| a housing having an outward end opening; | The Ro-Mai latch has a housing and an outward end opening, as shown above bump **6** |

| Claim | Where Disclosed in the Prior Art |
|---|---|
| | in Fig. C. |
| a latch bolt disposed within said housing; | The Ro-Mai latch has latch bolt disposed within said housing, as shown in Figs. A-C. |
| means for biasing said latch bolt outwardly through said outward end opening and having a nose portion adapted for engaging a respective one of said guide rails, | The Ro-Mai latch has a means for biasing said latch bolt outwardly through said outward end opening, as shown, *inter alia*, by the spring in Fig. 5 of the '291 patent. The latch bolt of the Ro-Mai latch has a nose portion adapted for engaging a respective one of said guide rails, as shown in Figs. A and B. |
| wherein said housing has a cover and a pair of side walls depending from said cover, | The Ro-Mai latch has a housing cover **2** and a pair of depending side walls, as shown in Figs. A and C, and also admitted in col. 1 of the '291 patent. |
| each of said side walls forming a longitudinal groove adapted to cooperatively receive a respective pair of said header rails, | If the "longitudinal groove" limitation is construed so as to be met by a device such as the accused device (as Newell contends), then this limitation is also met by the prior art Ro-Mai latch. |
| said housing further including means for engaging said respective one of said stiles. | Bump **6** of the Ro-Mai latch is a means for engaging a stile. |
| 3. The structure of claim 1 wherein said stile engaging means comprises a tab depending from said housing. | Bump **6** of the Ro-Mai latch is a tab depending from the housing. |
| 4. The structure of claim 1 wherein said latch bolt nose portion is beveled. | The latch bolt nose portion of the Ro-Mai latch is beveled, as shown in Fig. B. |
| 7. A pivot latch adapted for releasably securing a pivotable sash window to a master frame, said master frame having opposed, vertically extending guide rails, said sash having a hollow top sash rail, a base and a pair of hollow stiles cooperatively connected together at adjacent extremities thereof to form a rectangular sash frame, said top sash rail including a pair of opposing header slots, each of said header slots forming a pair of opposing, longitudinal header rails, said pivot | The Ro-Mai latch is a pivot latch adapted for releasably securing a pivotable sash window to a master frame, said master frame having opposed, vertically extending guide rails, said sash having a hollow top sash rail, a base and a pair of hollow stiles cooperatively connected together at adjacent extremities thereof to form a rectangular sash frame, said top sash rail including a pair of opposing header slots, each of said header slots forming a pair of |

| Claim | Where Disclosed in the Prior Art |
|---|---|
| latch comprising: | opposing, longitudinal header rails. |
| a housing having an outward end opening; | The Ro-Mai latch has a housing and an outward end opening, as shown above bump **6** in Fig. C. |
| a latch bolt disposed within said housing; | The Ro-Mai latch has latch bolt disposed within said housing, as shown in Figs. A-C. |
| means for biasing said latch bolt outwardly through said outward end opening and adapted for engaging a respective one of said guide rails, | The Ro-Mai latch has a means for biasing said latch bolt outwardly through said outward end opening, as shown, *inter alia*, by the spring in Fig. 5 of the '291 patent.<br><br>The latch bolt of the Ro-Mai latch has a nose portion adapted for engaging a respective one of said guide rails as shown in Figs. A and B. |
| wherein said housing has a cover having longitudinal edges and a pair of side walls depending from said cover and disposed inward of said edges, | The Ro-Mai latch has a housing cover **2** and a pair of depending side walls, as shown in Figs. A and C, and also admitted in col. 1 of the '291 patent.  The housing cover **2** has longitudinal edges **8**.  The side walls of the Ro-Mai latch are disposed inward of edges **8,** as shown in Figs. A-C. |
| each of said side walls having a side wall rail which cooperates with a respective one of said housing cover edges to form a longitudinal groove adapted to cooperatively receive a respective pair of said header rails. | If the "rail" limitation is construed so as to be met by a device such as the accused device (as Newell contends), then this limitation is also met by the prior art Ro-Mai latch.<br><br>If the "longitudinal groove" limitation is construed so as to be met by a device such as the accused device (as Newell contends), then this limitation is also met by the prior art Ro-Mai latch. |
| 8. The structure of claim 7, wherein said housing includes means for engaging a respective one of said stiles. | Bump **6** of the Ro-Mai latch is a means for engaging a stile. |
| 9. The structure of claim 8 wherein said stile engaging means comprises a tab depending from said housing. | Bump **6** of the Ro-Mai latch a tab depending from the housing. |

As noted above, discovery is ongoing, as is Vision's investigation into bases for invalidity of the asserted claims.  Accordingly, Vision reserves its right to supplement or amend its response, as appropriate, in view of discovery taken in this case and otherwise in view of Vision's continuing investigation.

> **INTERROGATORY NO. 3:**  State the factual basis for Defendant's contention that Defendant has not infringed and is not infringing the '158 Patent, either literally or under the doctrine of equivalents, including, but not limited to, all facts that allegedly support such contentions and the identity of all documents and things relating to such contention.

**Vision's Response to Interrogatory No. 3:**

Vision objects to this interrogatory as unduly broad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent this interrogatory seeks non-literal infringement contentions on products that are not accused of infringement products for which no infringement contentions have been provided, and/or claims that are not identified as being infringed.  Newell has identified claim 26 of the '158 patent as allegedly being infringed by an unspecified device depicted in a graphic attached to Newell's November 21, 2007 Responses to Vision's First Set of Interrogatories.  Vision further objects to this interrogatory as unduly broad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent this interrogatory seeks non-equivalent infringement contentions given that Newell has not articulated any theory of equivalent infringement.  Vision objects to this interrogatory as premature in that discovery relevant to claim construction issues (among other relevant matters) is ongoing.  Vision also objects to this interrogatory to the extent it seeks opinion testimony, which will be provided in accordance with the Court's scheduling order.

Subject to the foregoing objections, Vision presently responds based on its best information to date.

As an initial matter, claim 26 of the '158 patent is not infringed because that claim is invalid as set forth below in Vision's Response to Interrogatory No. 4 and unenforceable as set forth below in Vision's Response to Interrogatory No. 5.  An invalid or unenforceable claim cannot be infringed.  *See, e.g.*, *Leggett & Platt, Inc. v. CDP VUTEk, Inc.*, No. 4:05CV788 CDP, 2007 WL 2030134, *1 (E.D.Mo. July 9, 2007) ("No one can infringe an invalid patent claim") (citing *Schering Corp. v. Optical Radiation Corp.*, 867 F.2d 616 (Fed.Cir. 1989)).

Even if valid and enforceable, claim 26 would not be infringed by the accused Vision product.  Vision notes that Newell bears the burden of proving that the accused device meets each and every claim element of the asserted patent claim.  For example, claim 26 requires a vent stop comprising a pawl having a "contact edge … configured for abutting against the inside edge and adapted to transfer a portion of the upward force of said lower sash through the pawl and housing and into the upper sash frame."  Without conceding Newell has met its burden of establishing that any other limitations of claim 26 of the '158 patent are met by the accused Vision device, Vision notes in particular that Newell points to no evidence that the pawl of the accused device is "adapted to transfer" any force, much less the force required to be transferred as claimed in the '158 patent.  Accordingly, the accused Vision device would not infringe claim 26 of the '158 patent.

As noted above, discovery is ongoing, as is Vision's investigation into bases for non-infringement.  Accordingly, Vision reserves its right to supplement or amend its response, as appropriate, in view of discovery taken in this case and otherwise in view of Vision's continuing investigation.

**INTERROGATORY NO. 4:**  State in detail the factual basis for Defendant's contention that the claims of the '158 Patent are invalid, including a description of such invalidity contentions on an element-by-element break-down of each such patent claims, and an identification of all facts and document and things that allegedly support such contention(s) and specific reference to the sections and statutory requirements of each section of 35 U.S.C. §§ 1 *et seq.*, that Defendant contends applies.

**Vision's Response to Interrogatory No. 4:**

Vision objects to this interrogatory as unduly broad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent this interrogatory seeks invalidity contentions on claims other than the claims identified by Newell as allegedly infringed, *i.e.*, claim 26 of the '158 patent.  Vision objects to this interrogatory as premature in that discovery relevant to claim construction issues and prior art (among other relevant matters) is ongoing.  Vision also objects to this interrogatory to the extent it seeks opinion testimony, which will be provided in accordance with the Court's scheduling order.

Subject to the foregoing objections, Vision presently responds based on its best information to date.

Claim 26 of the '158 patent is anticipated under at least 35 U.S.C. §102(b) by prior art MEC vent stop model no. WH202 (depicted as follows):



As detailed in the invalidity chart below, claim 26 of the '158 patent is anticipated by

MEC prior art tilt latch model no. WH202.  A sample of WH202 is available for non-destructive

inspection for the purpose of confirming that each and every limitation of claim 26 of the '158

patent is met by WH202.

| Claim | Where / How Met By WH202 |
|---|---|
| 26. A window securing device for use in a double-hung sash window assembly having upper and lower sash window frames installed for relative overlapping vertical sliding movement, said upper sash frame having a recess into the interior of a vertical facial member thereof, said device comprising: | WH202 is a window securing device for use in a double-hung sash window assembly having upper and lower sash window frames installed for relative overlapping vertical sliding movement, said upper sash frame having a recess into the interior of a vertical facial member thereof. |
| a housing having a face plate having an opening in communication with a cavity in the housing, the opening defining an inside edge of the housing, the housing having a pair of side walls, | WH202 has a housing having a face plate having an opening in communication with a cavity in the housing, the opening defining an inside edge of the housing, the housing having a pair of side walls. |
| each side wall having an anchor tab extending outwardly from said sidewall, the housing adapted to be supported in the recess wherein a portion of the facial member is received between the faceplate and the anchor tabs; | Each side wall of WH202 has at least one anchor tab extending outwardly from each sidewall, the housing adapted to be supported in the recess wherein a portion of the facial member is received between the faceplate and |

| Claim | Where / How Met By WH202 |
|---|---|
| | the anchor tabs. |
| a pawl having an upper end having a contact edge, the pawl further having a lower end and a front surface and a back surface, | WH202 has a pawl having an upper end having a contact edge, the pawl further having a lower end and a front surface and a back surface. |
| the pawl being pivotally supported within the cavity; and | The pawl of WH202 is pivotally supported within the cavity. |
| a spring mounted on the pawl within the housing, | WH202 has a spring mounted on the pawl within the housing. |
| the spring normally biasing a lowermost arresting edge at said lower end of the pawl, away from the housing and adapted to be into the pathway of a top portion of the lower sash to define a securing position wherein the contact edge is configured for abutting against the inside edge and adapted to transfer a portion of the upward force of said lower sash through the pawl and housing and into the upper sash frame. | The spring of WH202 normally biases a lowermost arresting edge at the lower end of the pawl, away from the housing and adapted to be into the pathway of a top portion of the lower sash to define a securing position wherein the contact edge is configured for abutting against the inside edge and adapted to transfer most (if not all) of the upward force of the lower sash through the pawl and housing and into the upper sash frame. |

As detailed in the invalidity chart below, claim 26 of the '158 patent is obvious over U.S.

Patent No. 417,868 to Janes ("Janes") in view of U.S. Patent No. 5,536,052 to Maier ("Maier").

| Claim | Where Disclosed in the Prior Art |
|---|---|
| 26. A window securing device for use in a double-hung sash window assembly having upper and lower sash window frames installed for relative overlapping vertical sliding movement, said upper sash frame having a recess into the interior of a vertical facial member thereof, said device comprising: | Janes discloses a window securing device for use in a double-hung sash window assembly having upper and lower sash window frames installed for relative overlapping vertical sliding movement, said upper sash frame having a recess into the interior of a vertical facial member thereof. |
| a housing having a face plate having an opening in communication with a cavity in the housing, the opening defining an inside edge of the housing, the housing having a pair of side walls, | Janes discloses a housing C having a face plate having an opening in communication with a cavity in the housing, the opening defining an inside edge of the housing, the housing having a pair of side walls. |

| Claim | Where Disclosed in the Prior Art |
|---|---|
| each side wall having an anchor tab extending outwardly from said sidewall, the housing adapted to be supported in the recess wherein a portion of the facial member is received between the faceplate and the anchor tabs; | Janes does not disclose an anchor tab extending outwardly from the side wall. However, Maier discloses a housing having an anchor tab **54** to receive a portion of the facial member between the faceplate and the anchor tabs.  It would have been obvious to one of ordinary skill in the art to have provided the housing of Janes with anchor tabs disclosed by Maier, thus eliminating the need for securing screws and thereby reducing cost and increasing ease of installation and/or enabling the use the securing device of Janes with modern window frames. |
| a pawl having an upper end having a contact edge, the pawl further having a lower end and a front surface and a back surface, | Janes discloses a pawl **D** having an upper end having a contact edge, and a lower end, as well as a front surface and a back surface . |
| the pawl being pivotally supported within the cavity; and | The pawl **D** of Janes is pivotally mounted within the cavity. |
| a spring mounted on the pawl within the housing, | Janes discloses a spring **E** mounted on the pawl within the housing. |
| the spring normally biasing a lowermost arresting edge at said lower end of the pawl, away from the housing and adapted to be into the pathway of a top portion of the lower sash to define a securing position wherein the contact edge is configured for abutting against the inside edge and adapted to transfer a portion of the upward force of said lower sash through the pawl and housing and into the upper sash frame. | The spring **E** of Janes biases the pawl.  When the pawl is in the securing position an uppermost contact edge at the upper end of the pawl abuts an inside edge of the top of the opening in the faceplate, for transferring a portion of upward force of the lower sash through the pawl and housing into the upper sash frame.  (Janes, page 1, lines 89-97) |

As detailed in the invalidity chart below, claim 26 of the '158 patent is obvious over U.S. Patent No. 226,033 to Burns ("Burns") in view of U.S. Patent No. 5,536,052 to Maier ("Maier").

| Claim | Where Disclosed in the Prior Art |
|---|---|
| 26. A window securing device for use in a double-hung sash window assembly having upper and lower sash window frames installed for relative overlapping vertical sliding movement, said upper sash frame having a recess into the interior of a vertical facial member thereof, said device comprising: | Burns discloses a window securing device for use in a double-hung sash window assembly having upper and lower sash window frames installed for relative overlapping vertical sliding movement, said upper sash frame having a recess into the interior of a vertical facial member thereof. |
| a housing having a face plate having an opening in communication with a cavity in the housing, the opening defining an inside edge of the housing, the housing having a pair of side walls, | Burns discloses a housing including face plate **A** and side walls **B**.  Face plate **A** has an opening $A^1$ in communication with a cavity defined in part by side walls **B** and the back wall of the recess in the sash frame.  The opening of face plate **A** defines an inner edge of the housing. |
| each side wall having an anchor tab extending outwardly from said sidewall, the housing adapted to be supported in the recess wherein a portion of the facial member is received between the faceplate and the anchor tabs; | Burns does not disclose an anchor tab extending outwardly from the side wall. However, Maier discloses a housing having an anchor tab **54** to receive a portion of the facial member between the faceplate and the anchor tabs.  It would have been obvious to one of ordinary skill in the art to have provided the housing of Janes with anchor tabs disclosed by Maier, thus eliminating the need for securing screws and thereby reducing cost and increasing ease of installation and/or enabling the use the securing device of Burns with modern window frames. |
| a pawl having an upper end having a contact edge, the pawl further having a lower end and a front surface and a back surface, | Burns discloses a pawl **D** having an upper end having a contact edge, and a lower end, as well as a front surface and a back surface . |
| the pawl being pivotally supported within the cavity; and | The pawl **D** of Burns is pivotally mounted within the cavity. |

| Claim | Where Disclosed in the Prior Art |
|---|---|
| a spring mounted on the pawl within the housing, | Burns discloses a spring **e** mounted on the pawl within the housing. |
| the spring normally biasing a lowermost arresting edge at said lower end of the pawl, away from the housing and adapted to be into the pathway of a top portion of the lower sash to define a securing position wherein the contact edge is configured for abutting against the inside edge and adapted to transfer a portion of the upward force of said lower sash through the pawl and housing and into the upper sash frame. | The spring **e** of Burns biases a lowermost arresting edge of the lower end of the pawl away from the housing into the path of a lower sash to define a securing position.  When the pawl is in the securing position, a contact edge at the upper end of the pawl abuts an inside edge of the top of the opening in the faceplate, (*see* Burns, Fig. 2), for transferring upward force of the lower sash through the pawl and housing into the upper sash frame. |

As noted above, discovery is ongoing, as is Vision's investigation into bases for

invalidity of the asserted claim.  Accordingly, Vision reserves its right to supplement or amend

its response, as appropriate, in view of discovery taken in this case and otherwise in view of

Vision's continuing investigation.


**INTERROGATORY NO. 5:**  State in detail the factual basis for Defendant's contention that the '158 Patent is unenforceable, including, but not limited to, all facts that allegedly support such contention and the identity of all documents and things relating to such contention and facts.

**Vision's Response to Interrogatory No. 5:**

Vision objects to this interrogatory as premature in that discovery relevant to prior art and

other relevant matters respecting prosecution of the '158 patent is ongoing.  Vision also objects

to this interrogatory to the extent it seeks opinion testimony, which will be provided in

accordance with the Court's scheduling order.

Subject to the foregoing objections, Vision presently responds based on its best

information to date.

On July 19, 1996, Ashland filed a patent infringement lawsuit against M.E.C. Technologies, Inc. ("M.E.C."). After over three years of litigation, on October 21, 1999, Ashland and M.E.C. filed a stipulation and agreed order of dismissal, which order was subsequently entered on October 26, 1999. In 2000, Ashland acquired the window hardware business of M.E.C. Prior to that acquisition, and prior to February 15, 1999, M.E.C. had sold and/or offered sale a vent stop product identified as product no. WH202.

On February 14, 2000, Ashland was assigned the entire right title and interest in a patent application entitled "Apparatus for Securing Sash Window." Patent Application Serial No. 09/504,112, entitled "Apparatus for Securing Sash Window," was filed on February 15, 2000 by one of Ashland's attorneys. On February 12, 2002, Application Serial No. 10/074,542 was filed by one of Ashland's attorneys as continuation of Application Serial No. 09/504,112. Application Serial No. 10/074,542, also assigned to Ashland, issued as the '158 patent on June 3, 2003. The '158 patent has claims directed to vent stops.

One or more Ashland representatives owing a duty of disclosure under 37 C.F.R. 1.56 to the PTO in connection with prosecution of the application for the '158 patent (and its parent application) was aware, or should have been aware, of vent stop product no. WH202, that product no. WH202 had been sold and/or offered for sale by M.E.C. on or before February 14, 1999, and that such prior sale and/or offer for sale was material to the prosecution of the '158 patent for the reasons that, *inter alia*, WH202 anticipates claim 26 of the '158 patent. (*See supra*, Response to Interrogatory No. 4).

As noted above, discovery is ongoing, as is Vision's investigation into bases for unenforceability of the '158 patent. Accordingly, Vision reserves its right to supplement or

amend its response, as appropriate, in view of discovery taken in this case and otherwise in view of Vision's continuing investigation.

> **INTERROGATORY NO. 6:**  State the factual basis for Defendant's contention that Defendant has not infringed and is not infringing the '826 Patent, either literally or under the doctrine of equivalents, including, but not limited to, all facts that allegedly support such contention and the identity of all documents an things relating to such contention.

**Vision's Response to Interrogatory No. 6:**

Vision objects to this interrogatory as unduly broad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent this interrogatory seeks non-literal infringement contentions on products that are not accused of infringement and/or claims that are not identified as being infringed.  Newell has not identified any claims of the '826 patent as being allegedly infringed and has not provided any infringement contentions for the '826 patent, and therefore, this interrogatory is premature.  Put another way, there is no claim of the '826 patent in controversy.  Vision reserves its right to supplement or amend its response, as appropriate, in view of any infringement contentions Newell may in the future make (if at all), discovery taken in this case or otherwise in view of Vision's investigation.

> **INTERROGATORY NO. 7:**  State the factual basis for Defendant's contention that Defendant has not infringed and is not infringing the '557 Patent, either literally or under the doctrine of equivalents, including, but not limited to, all facts that allegedly support such contention and the identity of all documents and things relating to such contention.

**Vision's Response to Interrogatory No. 7:**

Vision objects to this interrogatory as unduly broad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent this interrogatory seeks

non-literal infringement contentions on products that are not accused of infringement products for which no infringement contentions have been provided, and/or claims that are not identified as being infringed.  Newell has only identified claim 3 of the '557 patent as allegedly being infringed by Vision's weep hole model no. 1233.  Vision further objects to this interrogatory as unduly broad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent this interrogatory seeks non-equivalent infringement contentions given that Newell has not articulated any theory of equivalent infringement.  Vision also objects to this interrogatory to the extent it seeks opinion testimony, which will be provided in accordance with the Court's scheduling order.

Subject to the foregoing objections, Vision presently responds based on its best information to date.

With respect to accused Vision weep cover model no. 1233, the '557 patent is not enforceable against that accused model pursuant to the doctrine of intervening rights because all units of that model were purchased by Vision during the lapse period of the '557 patent, *i.e.*, between April 23, 2006 and August 8, 2007.  Accordingly, the '557 patent is not infringed.

As noted above, discovery is ongoing, as is Vision's investigation into bases for non-infringement.  Accordingly, Vision reserves its right to supplement or amend its response, as appropriate, in view of discovery taken in this case and otherwise in view of Vision's continuing investigation.

**INTERROGATORY NO. 8**:  State in detail the factual basis for Defendant's contention that the claims of the '557 Patent are invalid, including a description of such invalidity contentions on an element-by-element break-down of each such patent claims, and an identification of all facts and document and things that allegedly support such contention(s) and specific reference to the sections and statutory requirements of each section of 35 U.S.C. §§ 1 *et seq.*, that Defendant contends applies.

**Vision's Response to Interrogatory No. 8:**

Vision objects to this interrogatory as unduly broad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence to the extent this interrogatory seeks invalidity contentions on claims other than the claims identified by Newell as allegedly infringed, *i.e.*, claim 3 of the '557 patent.  Vision objects to this interrogatory as premature in that discovery relevant to prior art (among other relevant matters) is ongoing.  Vision also objects to this interrogatory to the extent it seeks opinion testimony, which will be provided in accordance with the Court's scheduling order.

Subject to the foregoing objections, Vision presently responds based on its best information to date.  Claim 3 of the '557 patent is obvious over U.S. Patent No. 5,822,934.  One having ordinary skill in the art would have found it obvious to modify the device disclosed by U.S. Patent No. 5,822,934 in arriving at the invention claimed by claim 3 of the '557 patent.

As noted above, discovery is ongoing, as is Vision's investigation into bases for invalidity of the asserted claim.  Accordingly, Vision reserves its right to supplement or amend its response, as appropriate, in view of discovery taken in this case and otherwise in view of Vision's continuing investigation.

**INTERROGATORY NO. 9**:  Identify by name, description, model number, and photograph/drawing each variation, version, and/or model of a Tilt Latch product that Defendant has manufactured, sold, imported, offered for sale and/or sold in the United States from August 31, 2005 to the present date.

**Vision's Response to Interrogatory No. 9**:

Vision objects to this interrogatory to the extent it is unduly broad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to the foregoing objections, Vision will produce non-privileged / non-work product documents and things pursuant to Fed.R.Civ.P. 33(d).

**INTERROGATORY NO. 10**:  Identify by name, description, model number, and photograph/drawing each variation, version, and/or model of a Vent Stop product that Defendant has manufactured, sold, imported, offered for sale and/or sold in the United States from June 3, 2003 to the present date.

**Vision's Response to Interrogatory No. 10**:

Vision objects to this interrogatory to the extent it is unduly broad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to the foregoing objections, Vision will produce non-privileged / non-work product documents and things pursuant to Fed.R.Civ.P. 33(d).

**INTERROGATORY NO. 11**: Identify by name, description, model number, and photograph/drawing each variation, version, and/or model of a Weep Hole Cover product manufactured, sold, imported, offered for sale and/or sold in the United States by Defendant from April 23, 2002 to the present date.

**Vision's Response to Interrogatory No. 11**:

Vision objects to this interrogatory to the extent it is unduly broad and burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objections, Vision will produce non-privileged / non-work product documents and things pursuant to Fed.R.Civ.P. 33(d).

**INTERROGATORY NO. 12**: Identify and describe any written opinion(s), or summary of observations or analysis, received or requested by Defendants pertaining to validity, enforceability and/or infringement of any patent identified in the Amended Complaint in this litigation, and state the date of the opinion, the dates on which the opinion was requested and received by Defendant, and summarize and specify the nature of the opinion, identify the person(s) who prepared or expressed the opinion, identify all persons known to Defendant to have received a copy of the opinion, state whether Defendant intends to rely on the opinion(s) in defense of Plaintiff's charge of willful infringement, and identify the details and circumstances of such alleged reliance on the opinion(s).

**Vision's Response to Interrogatory No. 12**:

Vision objects to this interrogatory as eliciting information that is protected from disclosure pursuant to the attorney-client privilege and/or work product immunity doctrine. Vision objects to this interrogatory to the extent it requires immediate disclosure of whether Vision intends to rely on any opinion of counsel in defense of Newell's charge of willful infringement. If and when Vision so chooses to rely on any such opinion of counsel in defense of Newell's charge of willful infringement, Vision will provide the required discovery to Newell.

Subject to the foregoing objections, and without waiver of any privilege or any other

protection from disclosure, Vision identifies a written opinion authored by Thomas A. O'Rourke,

Esq., dated March 23, 2005, faxed to Andrew J. Rudd, Esq. of Newell Rubbermaid in the context

of settlement and licensing discussions (therefore being inadmissible under Fed.R.Evid. 408),

and concerning non-infringement of the '291 patent.  Otherwise, Vision will produce non-

privileged / non-work product documents and things pursuant to Fed.R.Civ.P. 33(d).  To the

extent there are any otherwise responsive documents subject to the attorney-client privilege

and/or work product immunity doctrine and which were generated prior to the initial filing of the

complaint in this case, Vision will identify any such documents in a privilege log.

> **INTERROGATORY NO. 13:**  State in detail the factual basis for
> Defendant's contentions set forth in Court IV ("Trade
> Disparagement/False Description") of Vision's Counterclaims,
> including all facts that allegedly support such contentions, all facts
> that allegedly show the intent of Newell, the identity of all
> documents an things relating to such contention and facts, and the
> identify of all person with knowledge of such facts.

**Vision's Response to Interrogatory No. 13:**

Vision objects to this interrogatory to the extent it seeks confidential information.  Vision

objects to this interrogatory as premature in that discovery relevant to the issues identified by this

interrogatory is ongoing.  Subject to the foregoing objections, Vision presently responds as

follows based on its best information to date:

Stern and/or Newell has informed actual or potential customers in at least the

geographical areas of Michigan and Ohio that certain of Vision's tilt latches and weep hole

covers infringe Newell's patents.  One or more of these actual or potential customers was

informed by Stern and/or Newell that if such customers purchase such certain Vision products

then such customers may be sued, have their production lines disrupted and/or risk losing their

supply of other products from Newell.  Vision identifies Luke Liang (CEO, Vision), Chip Moore (sales representative, Materials Solutions), Joe Altieri (sales representative, Velocity Marketing) and Tom Moore (sales representative, Materials Solutions) as individuals having knowledge of communications made by Stern and/or Newell to the extent such communications are relevant to Count IV of Vision's First Amended Counterclaim.

On the matter of Newell's intent, with respect to Vision's weep hole covers, Newell has admitted having no basis whatsoever for accusing those products of infringing the '557 patent prior to August 2007.  (Aug. 22, 2007 letter from B. Rademaker to J. Hill ("Newell is not aware of Vision products that infringe the '557 patent")).  With respect to Vision's tilt latches, Newell could have no good faith basis for accusing any tilt latch structurally similar, or identical, to the accused Vision device for the reasons set forth above.  (*See supra*, at Responses to Interrogatory Nos. 1 & 2).  With respect to Vision's vent stops, Newell could have no good faith basis for accusing any vent stop structurally similar, or identical, to the accused Vision device for the reasons set forth above.  (*See supra*, at Responses to Interrogatory Nos. 3-5).

As noted, discovery in this case is not complete, and Vision has not yet assessed the full scope of improper acts committed by Stern and/or Newell.  Nor has Vision quantified the full scope of the resulting harm to Vision.  Subject to the foregoing objections and entry of an appropriate protective order, Vision will identify pertinent customers with which Newell (via Stern) has communicated.  Vision will otherwise supplement or amend its response, as appropriate, in view of discovery taken in this case.

**INTERROGATORY NO. 14:** State in detail the factual basis for Defendant's contentions set forth in Count V ("Tortious Interference") of Vision's Counterclaims, including all facts that allegedly support such contention(s), all fact that allegedly show the intent of Newell, the identity of all document and things relating to such contention and facts, and the identity of all person with knowledge of such facts.

**<u>Vision's Response to Interrogatory No. 14</u>:**

Vision objects to this interrogatory to the extent it seeks confidential information.  Vision objects to this interrogatory as premature in that discovery relevant to the issues identified by this interrogatory is ongoing.  Subject to the foregoing objections, Vision presently responds as follows based on its best information to date:

Stern and/or Newell has informed actual or potential customers in at least the geographical areas of Michigan and Ohio that certain of Vision's tilt latches and weep hole covers infringe Newell's patents.  One or more of these actual or potential customers was informed by Stern and/or Newell that if such customers purchase such certain Vision products then such customers may be sued, have their production lines disrupted and/or risk losing their supply of other products from Newell.  Vision identifies Luke Liang (CEO, Vision), Chip Moore (sales representative, Materials Solutions), Joe Altieri (sales representative, Velocity Marketing) and Tom Moore (sales representative, Materials Solutions) as individuals having knowledge of communications made by Stern and/or Newell to the extent such communications are relevant to Count V of Vision's First Amended Counterclaim.

On the matter of Newell's intent, with respect to Vision's weep hole covers, Newell has admitted having no basis whatsoever for accusing those products of infringing the '557 patent prior to August 2007.  (Aug. 22, 2007 letter from B. Rademaker to J. Hill ("Newell is not aware of Vision products that infringe the '557 patent")).  With respect to Vision's tilt latches, Newell

could have no good faith basis for accusing any tilt latch structurally similar, or identical, to the accused Vision device for the reasons set forth above.  (*See supra*, at Responses to Interrogatory Nos. 1 & 2).  With respect to Vision's vent stops, Newell could have no good faith basis for accusing any vent stop structurally similar, or identical, to the accused Vision device for the reasons set forth above.  (*See supra*, at Responses to Interrogatory Nos. 3-5).

As noted, discovery in this case is not complete, and Vision has not yet assessed the full scope of improper acts committed by Stern and/or Newell.  Nor has Vision quantified the full scope of the resulting harm to Vision.  Subject to the foregoing objections and entry of an appropriate protective order, Vision will identify pertinent customers with which Newell (via Stern) has communicated.  Vision will otherwise supplement or amend its response, as appropriate, in view of discovery taken in this case.

> **INTERROGATORY NO. 15:**  State in detail the factual basis for Defendant's contentions set forth in its counterclaim(s) based upon alleged antitrust violation and/or Sherman Act violation(s), by Newell, including all facts that allegedly support such contention, all facts that allegedly show the alleged monopoly, alleged fraudulent intent by Newell, the identity of all documents and things relating to such contentions and facts, and the identity of all person with knowledge of such facts.

**Vision's Response to Interrogatory No. 15:**

Vision objects to this interrogatory to the extent it seeks confidential information.  Vision objects to this interrogatory as premature in that discovery relevant to the issues identified by this Interrogatory is ongoing.  Vision also objects to this interrogatory to the extent it seeks opinion testimony, which will be provided in accordance with the Court's scheduling order.  Subject to the foregoing objections, Vision presently responds as follows based on its best information to date:

Newell's claim that Vision infringes the '291 patent is objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits of that claim.  (*See supra*, at Responses to Interrogatory Nos. 1 & 2).  Thus, at the time this litigation was filed, Newell knew that no accused Vision product infringes any valid and enforceable claim of the '291 patent.

Newell's claim that Vision infringes the '158 patent is objectively baseless in the sense that no reasonable litigant could reasonably expect success on the merits of that claim.  (*See supra*, at Responses to Interrogatory Nos. 3-5).  Thus, at the time this litigation was filed, Newell knew that no accused Vision product infringes any valid and enforceable claim of the '158 patent.

In addition, the '158 patent was fraudulently obtained from the PTO.  The prior art MEC vent stop was highly material to the prosecution of the '158 patent because it anticipates one or more claims of the patent.  (*See supra*, at Responses to Interrogatory Nos. 4 & 5).  Accordingly, the Patent Office would not have issued at least claim 26 of the '158 patent had the prior art MEC vent stop been disclosed during prosecution of the '158 patent.  Further, Newell / Ashland was aware of the prior art MEC vent stop during prosecution of the '158 patent because, prior to filing the application for the '158 patent, Newell / Ashland purchased the business segment of MEC responsible for making vent stop model no. WH202.  Thus, Newell / Ashland knowingly procured a patent to cover a product which had been on sale more than one year prior to the earliest possible effective filing date of the '158 patent.  Vision identifies Paul J. Nykaza as a person knowledgeable of the foregoing facts.

As noted above, discovery is ongoing, as is Vision's investigation of Newell's antitrust violations.  Accordingly, Vision reserves its right to supplement or amend its response, as

appropriate, in view of discovery taken in this case and otherwise in view of Vision's continuing investigation.

> **INTERROGATORY NO. 16:**  State in detail Vision's contentions that Vision has been damaged or harmed by conduct and/or alleged wrongful acts by or on behalf of Newell as alleged in Vision's Counterclaims, including a detailed description of the basis for such alleged damages or harm, identification of the documents that allegedly support such allegations, and identification of all person with knowledge of facts that support such contentions of damage or harm.

**Vision's Response to Interrogatory No. 16:**

Vision objects to this interrogatory to the extent it seeks confidential information.  Vision objects to this interrogatory as premature in that discovery relevant to the issues identified by this interrogatory is ongoing.  Vision reserves its right to supplement or amend its response, as appropriate, in view of discovery taken in this case and otherwise in view of Vision's continuing investigation.

Dated:  December 17, 2007                              Respectfully submitted,

By:      s/Jonathan Hill
    Raymond N. Nimrod
    Jonathan Hill
    JENNER & BLOCK LLP
    330 N. Wabash Avenue
    Chicago, IL 60611
    Telephone: 312 222-9350
    Facsimile: 312 527-0484

    Attorneys for Defendant and
    Counterclaim-Plaintiff,
    VISION INDUSTRIES GROUP, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2007, a true and correct copy of the foregoing

**VISION'S RESPONSES TO NEWELL'S INTERROGATORIES (NOS. 1-16)** was caused

to be served via email upon the following counsel:


Bradley F. Rademaker
Aseet Patel
BANNER & WITCOFF, LTD.
10 South Wacker Drive, Suite 3000
Chicago, Illinois  60606
Counsel for Newell Operating Company


Mark D. Roth
ORUM & ROTH
53 W. Jackson Boulevard, Suite 1616
Chicago, Illinois  60604
Counsel for Stern & Company


     s/Jonathan Hill
One of the Attorneys for
Defendant and Counterclaim-Plaintiff,
VISION INDUSTRIES GROUP, INC.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEWELL OPERATING COMPANY, | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | Civil Action No.:  07 C 2996 |
| | ) | |
| v. | ) | Judge Hibbler |
| | ) | |
| VISION INDUSTRIES GROUP, INC., | ) | Magistrate Judge Valdez |
| | ) | |
| Defendant and Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERN & COMPANY, | ) | |
| | ) | |
| Counterclaim-Defendant. | | |

**EXHIBIT I TO NEWELL'S RESPONSE TO
VISION'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*Pursuant to Local Rules 5.8 and 26.2, this envelope contains
materials subject to a Stipulated Protective Order entered in this
action on January 16, 2008 (Docket No. 47).  It is not to be made
public, except by order of the Court.*

**CONFIDENTIAL – FILED UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEWELL OPERATING COMPANY, | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | Civil Action No.:  07 C 2996 |
| | ) | |
| v. | ) | Judge Hibbler |
| | ) | |
| VISION INDUSTRIES GROUP, INC., | ) | Magistrate Judge Valdez |
| | ) | |
| Defendant and Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERN & COMPANY, | ) | |
| | ) | |
| Counterclaim-Defendant. | | |

**EXHIBIT J TO NEWELL'S RESPONSE TO
VISION'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*Pursuant to Local Rules 5.8 and 26.2, this envelope contains
materials subject to a Stipulated Protective Order entered in this
action on January 16, 2008 (Docket No. 47).  It is not to be made
public, except by order of the Court.*

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT K

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NEWELL OPERATING COMPANY, | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | Civil Action No.   07 C 2996 |
| | ) | |
| v | ) | Judge Hibbler |
| | ) | |
| VISION INDUSTRIES GROUP, INC., | ) | Magistrate Judge Valdez |
| | ) | |
| Defendant and Counterclaim-Plaintiff, | ) | |
| | ) | |
| v | ) | |
| | ) | |
| STERN & COMPANY, | ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |

**AFFIDAVIT OF STEVEN E. SCHULTZ**
**IN SUPPORT OF NEWELL'S OPPOSITION TO VISION'S**
**MOTION FOR SUMMARY JUDGEMENT**

I, Steven E. Schultz, hereby swear and affirm as follows:

**Background and Qualifications**

1    I am a retired employee of Ashland Hardware Systems (now part of Newell

Rubbermaid) and am the Inventor of the tilt latch structure of U.S. Patent No. 5,139,291 (the

"'291 Patent"). I have 24 years of experience in the window component industry, while

employed at Ashland/Newell.  While employed at Ashland/Newell, I managed the engineers

working on the design of tilt latch products, and was also directly involved with design work for

window products, including tilt latches for double hung (sash) windows.  This included new

product development, as well as production engineering work specifically related to tilt latch products of Ashland/Newell.

### The '291 Patent

2.  I am the inventor of the subject matter covered by the '291 Patent, and am familiar with the claims of the patent and the prior Court Orders concerning interpretation of certain parts of the '291 Patent claims.

3.  Claims 1 and 7 of the '291 Patent require that the tilt-latch have a "longitudinal groove" for receiving a header rail of a window sash. Specifically, Claims 1 and 7 read as follows:

> ***Claim 1***     For a pivotal window sash adapted for installation in a master frame of a sash window assembly having opposed, vertically extending guide rails to enable vertical reciprocal sliding movement of said sash window in said master frame while cooperatively engaged with said guide rails, said window sash having a top sash rail, a base and a pair of stiles cooperatively connected together at adjacent extremities thereof to form a rectangular sash frame, said top sash rail including a pair of opposing header slots, each of said header slots having a pair of opposing, longitudinal header rails, a pre-assembled pivot latch adapted for substantially flush installation in one of said header slots for releasably securing said window sash to said master frame to permit pivotal movement of said sash, said latch comprising:
>
> a housing having an outward end opening;
>
> a latch bolt disposed within said housing;
>
> means for biasing said latch bolt outwardly through said outward end opening and having a nose portion adapted for engaging a respective one of said guide rails, wherein said housing has a cover and a pair of side walls depending from said cover, *each of said side walls forming a longitudinal groove adapted to cooperatively receive a respective pair of said header rail*s, said housing further including means for engaging said respective one of said stiles.

2

\* \* \*

> *Claim 7*      A pivot latch adapted for releasably securing a pivotable sash window to a master frame, said master frame having opposed, vertically extending guide rails, said sash having a hollow top sash rail, a base and a pair of hollow stiles cooperatively connected together at adjacent extremities thereof to form a rectangular sash frame, said top sash rail including a pair of opposing header slots, each of said header slots forming a pair of opposing, longitudinal header rails, said pivot latch comprising:
>
> a housing having an outward end opening;
>
> a latch bolt disposed within said housing;
>
> means for biasing said latch bolt outwardly through said outward end opening and adapted for engaging a respective one of said guide rails, wherein said housing has a cover having longitudinal edges and a pair of side walls depending from said cover and disposed inward of said edges, each of said side walls having a side wall rail which cooperates with a respective one of said housing cover edges to form <u>a longitudinal groove adapted to cooperatively receive a respective pair of said header rails</u>.

4.   I understand that the literal interpretation of the underlined text of the claims (above) has been expressed as follows: "a recess formed along the exterior side of each of the side walls which receives a respective one of the opposed header rails along the length of the housing, wherein each of the recesses is defined by two spaced recess walls which cooperated to receive one of the header rails, and each of the recess walls is defined by one or more projections which extend substantially along the length of the side wall (any gaps between projections shall be disregarded in determining the length that the projections extend)." defined by two spaced walls which cooperate to receive one of the header rails, and each of the recess walls is defined by one or more projections which extend substantially along the length of the side wall."

5.   A purpose of each such "longitudinal groove" structure in Claims 1 and 7 is to receive a header rail along a length of the tilt-latch.  The patent shows a preferred example wherein the housing cover (50) cooperates with respective side wall projections (62) and the side wall (56, 58) to form a longitudinal groove (64) to receive the header rail.  In this preferred example, shown in the figure below (FIG. 2 from the '291 Patent), the housing cover is continuous and each side wall projection extends continuously along the length of each side wall to form a groove for receiving the header rail.



6.   It is possible to have other configurations of tilt-latches having side wall projections that do not extend continuously along the length of the side wall that also serve the same function as the preferred example described in the '291 patent – i.e., to receive the header rail. While this is done most effectively with a continuous projection that extends along the length of the tilt-latch, the same function can be achieved with other structural configurations, such as with projections that do not extend continuously along the length of the side wall.  Further, I understand that the prior court orders relating to claim construction of the '291 Patent stated that

4

the claims are broader than the preferred example described above, and that the plain language of the claims do not require a "continuous groove."

## **Vision's Tilt-latch Products**

7   I have studied Vision's tilt-latch products accused of infringement in this case. I observed that Vision's tilt latch products have two basic types of body construction, as are depicted below:



This type of tilt latch product of Vision has a relatively thick tab on the front portion of the sidewall and a thick rear tab that has a portion extending outward relative to the sidewall.



This type of tilt latch product of Vision has a thinner tab on the front portion of the sidewall and a thin rear tab with a portion extending outward relative to the sidewall.

8.   I have examined a number of physical tilt latch samples provided by Vision to Newell, representing the commercial tilt latch products of Vision.  These include the following samples, shown in **Attachment A** hereto:

| VISION PRODUCTION NO. | VISION MODEL NO. |
|---|---|
| V101 | 2681 |
| V100 | 2680 |
| V104 | 2691 |
| V182 | 2680 |
| V103 | 2690 |
| V106 | 2698 |
| V181 | 2640 |
| V105 | 2693 |
| V102 | 2685 |
| V150 | 2780 |
| V151 | 2790 |
| V152 | 2791 |
| Plaintiff's Exhibit 7 | 27?? |
| | |

9.    Each of Vision's tilt-latch products has the structural equivalent of "longitudinal groove."   Specifically, as shown in the figures below, Vision's tilt latches have a recess structure defined by the combination of a cover on top and a sidewall, along with a first projection located near the end opening of the tilt latch and a rear wall projection that extends outward from the planar orientation of the side wall.

 

10. The first side wall projection and the rear wall projection cooperate with the housing cover and the side wall to form a recess structure to receive the header rail along all or nearly all of the length of the side wall of the tilt latch.

11   This equivalent structure of the longitudinal groove is clear when viewing the latch from the end, such as shown below   The first side wall projection and the second rearward projections, along with the housing cover and the side wall, define a U-shaped space for receiving the header rail, similar to a continuous groove along the sidewall.



12.   Like the first side wall projection, the function of the rear wall projection is to receive and engage the header rail.   Even though the side wall projection in Vision's tilt latches does not extend substantially along the length of the side wall, the side wall projection cooperates with the rear wall projection to achieve the same function – *i.e.*, to receive the header rail of a

window sash – as a "longitudinal groove" having a sidewall projection that does extend substantially along the length of a side wall of a tilt latch.  In other words, Vision has essentially combined two elements – the side wall projection and the rear wall projection – to perform the function of "one or more side wall projections which extend substantially along the length of the side wall" of the tilt latch.

13. The rear wall projection of Vision's latch products, extending outward relative the plane of the sidewall, is functionally the same as having the rear projection extend directly from the sidewall itself, as it results in a structure that forms a recess structure or groove-like arrangement in cooperation with the top cover and the side wall.

14. Based on my review of Vision's products, I conclude the recess structure in Vision's tilt latches performs the same function (i.e., to receive the header rail), in substantially the same way, to achieve the same result as the claimed "longitudinal groove adapted to cooperatively receive a respective pair of said header rails" in Claims 1 and 7 of the '291 patent.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that I am competent to testify as to the matters herein.

Date: _February 6, 2009_     _Steven E. Schultz_
                              Steven E. Schultz

SUBSCRIBED AND SWORN TO before
me this __6__ day of February, 2009.

_____
Notary Public

"OFFICIAL SEAL"
Steven Briggs
Notary Public, State of Illinois
My Commission Expires 11/18/2012

**V000100**

**V000101**

**V000102**

**V000103**







**Plaintiff's Exhibit 7**

   

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEWELL OPERATING COMPANY, | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | Civil Action No.:  07 C 2996 |
| | ) | |
| v. | ) | Judge Hibbler |
| | ) | |
| VISION INDUSTRIES GROUP, INC., | ) | Magistrate Judge Valdez |
| | ) | |
| Defendant and Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERN & COMPANY, | ) | |
| | ) | |
| Counterclaim-Defendant. | | |

**EXHIBIT L TO NEWELL'S RESPONSE TO
VISION'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*Pursuant to Local Rules 5.8 and 26.2, this envelope contains
materials subject to a Stipulated Protective Order entered in this
action on January 16, 2008 (Docket No. 47).  It is not to be made
public, except by order of the Court.*

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT M

# 2681L

Home > Catalog > Window Hardware > Tilt Latches > 2681L

<< first        < prev                    next >        last >>

Tilt Latch

Flush mount, square ended housing, self locking, Left



2681 RDI -L means:
Raised Button-0.373 Tongue Offset-0.075 Side Wall Setback-Left

| button | F-Flat Button | | | |
| | R-Raised button | | | |
| | A | B | C | D |
| OFFSET | 0.248" | 0.283" | 0.318" | 0.373" |
| | 1 | 2 | 3 | 4 |
| SETBACK | 0.075" | 0.092" | 0.195" | 0.375" |

REMOVE

**WELCOME, Sasha Stenison**

SEARCH VIG

**DOOR HARD**

**MISCELLAN
PARTS**

**PATIO DOOR
HARDWARE**

**WEATHER S**

**WINDOW HA**

BALANCE SHO

CASEMENT, A
PIVOT, AND P
WINDOWS HA

END CAP

KEEPERS

MISCELLANE
WINDOW PAR

PIVOT BARS /
SASH ASSEM

ROLLERS

SASH LIFT

SASH LOCKS

SCREEN PART

TILT LATCHES

VENT STOPS

WEEP HOLE C

CATALOG
QUOTE & ORDER CENTER
NEWS & EVENTS
CAPABILITIES
NEW PRODUCTS
HOME
NEWSLETTER
FREE TOOLING PROGRAM
CONTACT US
SIGN IN
FINISH CODES
ORDER SPECIFICATIONS
SEARCH

C-3

LEGAL NOTICES & TERMS OF USE | PRIVACY | Copyright 2004. Vision Industries Group.



## 2681R

*CATALOG*

Home > Catalog > Window Hardware > Tilt Latches > 2681R

&lt;&lt; first          &lt; prev                         next >                last >>

WELCOME, Sasha Stenison.  (That's not me.) 

SEARCH VIG

Advanced Search

Tilt Latch

Flush mount, square ended housing, self locking,right





| DOOR HARDWARE |
| **MISCELLANEOUS PARTS** |
| **PATIO DOOR HARDWARE** |
| **WEATHER STRIP** |
| **WINDOW HARDWARE** |
| BALANCE SHOES |
| CASEMENT, AWNINGS, PIVOT, AND PROJECTED WINDOWS HARDWARE |
| END CAP |
| KEEPERS |
| MISCELLANEOUS WINDOW PARTS |
| PIVOT BARS AND PIVOT SASH ASSEMBLIES |
| ROLLERS |
| SASH LIFT |
| SASH LOCKS |
| SCREEN PARTS |
| TILT LATCHES |
| VENT STOPS |
| WEEP HOLE COVERS |

| Button: | F-Flat Button | | | |
|---|---|---|---|---|
| | R-Raised Button | | | |
| | A | B | C | D |
| OFFSET | 0.248" | 0.283" | 0.318" | 0.375" |
| | 1 | 2 | 3 | 4 |
| SETBACK | 0.075" | 0.092" | 0.195" | 0.375" |

2681RD1-R means:
Raised Button-0.373 Tougue Offset-0.075 Side Wall Setback-Right



C-4

LEGAL NOTICES & TERMS OF USE | PRIVACY | Copyright 2004. Vision Industries Group.



## 2691R

**CATALOG**

WELCOME, Sasha Stenison. (That's not me.)

<< first        < prev                          next >        last >>

Tilt Latch

Round ended housing, self locking, right

SEARCH VIG



Advanced Search





| Button | F-Flat Button R-Raised Button | | | |
|--------|--------|--------|--------|--------|
|  | A | B | C | D |
| OFFSET | 0.248" | 0.283" | 0.318" | 0.373" |
| SETBACK | 1 0.075" | 2 0.092" | 3 0.195" | 4 0.375" |

2691 RD1-R means:
Raised Button-0.373 Tougue Offset-0.075 Side Wall Setback-Right



| DOOR HARDWARE |
| MISCELLANEOUS PARTS |
| PATIO DOOR HARDWARE |
| WEATHER STRIP |
| WINDOW HARDWARE |
| BALANCE SHOES |
| CASEMENT, AWNINGS, PIVOT, AND PROJECTED WINDOWS HARDWARE |
| END CAP |
| KEEPERS |
| MISCELLANEOUS WINDOW PARTS |
| PIVOT BARS AND PIVOT SASH ASSEMBLIES |
| ROLLERS |
| SASH LIFT |
| SASH LOCKS |
| SCREEN PARTS |
| TILT LATCHES |
| VENT STOPS |
| WEEP HOLE COVERS |

**CATALOG**
QUOTE & ORDER CENTER
NEWS & EVENTS
CAPABILITIES
NEW PRODUCTS
HOME
NEWSLETTER
FREE TOOLING PROGRAM
CONTACT US
SIGN IN
FINISH CODES
ORDER SPECIFICATIONS
SEARCH

C-14

LEGAL NOTICES & TERMS OF USE | PRIVACY | Copyright 2004. Vision Industries Group.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEWELL OPERATING COMPANY, | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | Civil Action No.:  07 C 2996 |
| | ) | |
| v. | ) | Judge Hibbler |
| | ) | |
| VISION INDUSTRIES GROUP, INC., | ) | Magistrate Judge Valdez |
| | ) | |
| Defendant and Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERN & COMPANY, | ) | |
| | ) | |
| Counterclaim-Defendant. | | |

**EXHIBIT N TO NEWELL'S RESPONSE TO
VISION'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*Pursuant to Local Rules 5.8 and 26.2, this envelope contains
materials subject to a Stipulated Protective Order entered in this
action on January 16, 2008 (Docket No. 47).  It is not to be made
public, except by order of the Court.*

**CONFIDENTIAL – FILED UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEWELL OPERATING COMPANY, | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | Civil Action No.:  07 C 2996 |
| | ) | |
| v. | ) | Judge Hibbler |
| | ) | |
| VISION INDUSTRIES GROUP, INC., | ) | Magistrate Judge Valdez |
| | ) | |
| Defendant and Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERN & COMPANY, | ) | |
| | ) | |
| Counterclaim-Defendant. | | |

**EXHIBIT O TO NEWELL'S RESPONSE TO
VISION'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*Pursuant to Local Rules 5.8 and 26.2, this envelope contains
materials subject to a Stipulated Protective Order entered in this
action on January 16, 2008 (Docket No. 47).  It is not to be made
public, except by order of the Court.*

**<u>CONFIDENTIAL – FILED UNDER SEAL</u>**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEWELL OPERATING COMPANY, | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | Civil Action No.:  07 C 2996 |
| | ) | |
| v. | ) | Judge Hibbler |
| | ) | |
| VISION INDUSTRIES GROUP, INC., | ) | Magistrate Judge Valdez |
| | ) | |
| Defendant and Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERN & COMPANY, | ) | |
| | ) | |
| Counterclaim-Defendant. | | |

**EXHIBIT P TO NEWELL'S RESPONSE TO
VISION'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*Pursuant to Local Rules 5.8 and 26.2, this envelope contains
materials subject to a Stipulated Protective Order entered in this
action on January 16, 2008 (Docket No. 47).  It is not to be made
public, except by order of the Court.*

**CONFIDENTIAL – FILED UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEWELL OPERATING COMPANY, | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | Civil Action No.:  07 C 2996 |
| | ) | |
| v. | ) | Judge Hibbler |
| | ) | |
| VISION INDUSTRIES GROUP, INC., | ) | Magistrate Judge Valdez |
| | ) | |
| Defendant and Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERN & COMPANY, | ) | |
| | ) | |
| Counterclaim-Defendant. | | |

**EXHIBIT Q TO NEWELL'S RESPONSE TO
VISION'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*Pursuant to Local Rules 5.8 and 26.2, this envelope contains
materials subject to a Stipulated Protective Order entered in this
action on January 16, 2008 (Docket No. 47).  It is not to be made
public, except by order of the Court.*

**CONFIDENTIAL – FILED UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEWELL OPERATING COMPANY, | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | Civil Action No.:  07 C 2996 |
| | ) | |
| v. | ) | Judge Hibbler |
| | ) | |
| VISION INDUSTRIES GROUP, INC., | ) | Magistrate Judge Valdez |
| | ) | |
| Defendant and Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERN & COMPANY, | ) | |
| | ) | |
| Counterclaim-Defendant. | | |

**EXHIBIT R TO NEWELL'S RESPONSE TO
VISION'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*Pursuant to Local Rules 5.8 and 26.2, this envelope contains
materials subject to a Stipulated Protective Order entered in this
action on January 16, 2008 (Docket No. 47).  It is not to be made
public, except by order of the Court.*

**CONFIDENTIAL – FILED UNDER SEAL**

# EXHIBIT S

# JENNER&BLOCK

February 27, 2008

Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611
Tel 312-222-9350
www.jenner.com

Chicago
Dallas
New York
Washington, DC

## *VIA HAND DELIVERY*

Bradley Rademaker
BANNER &WITCOFF, LTD.
Ten South Wacker Drive
Suite 3000
Chicago, Illinois  60606

Jonathan Hill
Tel   312 923-8318
Fax   312 923-8418
jhill@jenner.com

**Re:**   *Newell Operating Co. v. Vision Indus. Group, Inc.,*
         **Case No. 07-C-2996 (N.D. Ill.)**

Dear Brad:

Further in response to your letter of February 18, 2008, I am enclosing samples of Vision tilt latch model nos. 2640 (V0181), 2680 (V0182) and 2830 (V0183).

I do have one sample of what I believe to be a Vision zinc cover tilt latch model, which I can make available for inspection.  Vision does not otherwise have any zinc cover models (including nos. 2682-2684) to produce or make available for inspection.

As noted in my letter of February 19, 2008, model nos. 2850, 2860 and 2870 were produced during the January 22, 2008 deposition of Mr. Liang.  Tilt latch model no. 2869 was produced (as V0180) with my February 19 letter.

As for the other models referenced in your February 18 letter, there are no samples of model nos. 2694, 2781 and 2794 available for production or inspection.  I understand Vision has not sold any such models.

We are in the process of gathering engineering drawings, and expect to have those produced early next week.

Very truly yours,

Jonathan Hill

Enclosures

cc:    Mark D. Roth (via email, without enclosures)



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEWELL OPERATING COMPANY, | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | Civil Action No.:  07 C 2996 |
| | ) | |
| v. | ) | Judge Hibbler |
| | ) | |
| VISION INDUSTRIES GROUP, INC., | ) | Magistrate Judge Valdez |
| | ) | |
| Defendant and Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERN & COMPANY, | ) | |
| | ) | |
| Counterclaim-Defendant. | | |

**EXHIBIT T TO NEWELL'S RESPONSE TO
VISION'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*Pursuant to Local Rules 5.8 and 26.2, this envelope contains
materials subject to a Stipulated Protective Order entered in this
action on January 16, 2008 (Docket No. 47).  It is not to be made
public, except by order of the Court.*

**CONFIDENTIAL – FILED UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEWELL OPERATING COMPANY, | ) | |
| | ) | |
| Plaintiff and Counterclaim-Defendant, | ) | Civil Action No.:  07 C 2996 |
| | ) | |
| v. | ) | Judge Hibbler |
| | ) | |
| VISION INDUSTRIES GROUP, INC., | ) | Magistrate Judge Valdez |
| | ) | |
| Defendant and Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STERN & COMPANY, | ) | |
| | ) | |
| Counterclaim-Defendant. | | |

**EXHIBIT U TO NEWELL'S RESPONSE TO
VISION'S STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*Pursuant to Local Rules 5.8 and 26.2, this envelope contains
materials subject to a Stipulated Protective Order entered in this
action on January 16, 2008 (Docket No. 47).  It is not to be made
public, except by order of the Court.*

**CONFIDENTIAL – FILED UNDER SEAL**