**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **NEWELL OPERATING COMPANY,** | ) | |
| Plaintiff and Counterclaim-Defendant, | ) ) ) | Civil Action No. 07 C 2996 |
| v. | ) ) | Judge William J. Hibbler |
| **VISION INDUSTRIES GROUP, INC.,** | ) ) | Magistrate Judge Maria Valdez |
| Defendant and Counterclaim-Plaintiff, | ) ) | |
| v. | ) ) | |
| **STERN & COMPANY,** | ) ) | |
| Counterclaim-Defendant. | ) ) | |

**NEWELL'S STATEMENT OF FACTS IN
OPPOSITION TO VISION'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

In accordance with Local Rule 56.1, Plaintiff Newell Operating Company ("Newell") submits this Statement of Additional Facts In Opposition to Vision Industries Group, Inc.'s ("Vision") Motion for Summary Judgment.

For the purposes of this Statement of Facts, the term "accused products" of Vision refers to Vision tilt latch products in suit, namely, Model 2600-series and Model 2700-series products.

## **Vision's Products Have The Equivalent To A "Longitudinal Groove"**

1. A function of the "longitudinal groove" limitation in Claims 1 and 7 of the '291 Patent is to receive and retain the tilt latch in the header rail of a window sash. Ex. A, '291 Patent, Claims 1 and 7.

2. Vision's accused products have the functional and structural equivalent of the "longitudinal groove" limitation. Ex. K, Schultz Affidavit, at ¶ 9.

3. Vision's accused products have a sidewall projection near the front of the tilt latch that protrudes from the side wall, which serves the function of receiving and retaining the tilt latch in the header rail of a window sash. Ex. H, Vision's Response to Newell's Interrogatories, p. 5; Ex. U – Liang, p. 90.

4. Vision's accused products also have a rear projection that extends outward from the line of the side wall, which serves the function of receiving and retaining the latch in the header rail of window sash. Ex. U – Liang, p. 90; Ex. L, EV98505-06, p. 3; Ex. G, EV98506, p. 3; Ex. G, EV76657, at p. 1.

5. The rear projection of Vision's accused products extend outward of the sidewall line to provide "guidance of the latch along the sash slot." Vision's Mem. In Support of Motion for Summary Judgment, p. 12.

6. One function of the rear projection of Vision's accused products is to prevent the tilt latch from "pop[ping] out." Vision's Mem. in Support of Motion for Summary Judgment, p. 12; *see also* Ex. L, EV98505.

7. The rear projection of Vision's accused products functions the same, regardless of whether that rear projection extends directly from the rear portion of the sidewall of the accused product. Ex. K, Schultz Affidavit, at ¶ 13.

8. In end view, the front projection of each Vision accused product is aligned with the rear wall projection, in spaced relationship from the cover of the latch. Ex. K, p. 7.

9. The front wall projection and the rear projection of Vision's accused products cooperate with the side wall and the top cover of the tilt latch to form a recess structure along the length of the tilt latch. Ex. K, Schultz Affidavit, at ¶ 10; Ex. H, Vision's Response to Newell's Interrogatories.

10. Viewing Vision's accused products from the end view, the projections and side wall and cover together form a U-shaped recess along each side of the tilt latch. Ex. K; *See* Ex. I, EV49704; Ex. I, EV49699.

11. The U-shaped recess structure, seen from the end view of Vision's accused products, functions to receive the header rail of a window sash along the length of the tilt latch. Ex. K, Schultz Affidavit, at ¶ 10 and 13-14.

12. The U-shaped recess structure, seen from the end view of Vision's accused products, engages the header rail at multiple points along the length of the tilt latch to retain the tilt latch in position when installed in the window sash. Ex. K Schultz, Affidavit, at ¶¶ 13, 14; *see also* Ex. L, EV98505; Ex. L, EV98506, p. 3.

13. Vision's accused products have a combination of two elements – the front side wall projection and the rear projection – to perform the same function of "one or more side wall projections which extend substantially along the length of the side wall" of the tilt latch. Ex. K, Schultz Affidavit, at ¶ 12.

14. Vision's accused products are different from the prior art Ro-Mai tilt latch because, amongst other things, the Ro-Mai latch does not have a rear projection that extends

3

outward from the line of the side wall to receive a header rail of a window sash. Ex. F, *Ro-Mai* Ruling, p. 3 (Figure depicting Ro-Mai latch).

15. Each front projection of Vision's accused products, although extending only partially down the length of the side wall, is perfectly aligned with the rear projection as it extends outward of the line of the side wall. Ex. K.

16. The prior Markman Rulings (from the *Ro-Mai* and the *MEC* cases) is limited to the claim construction of the terms then in dispute, including the term "longitudinal groove adapted to cooperatively receive a respective pair of said header rails." Ex. E and Ex. F.

17. The prior Markman Rulings (from the *Ro-Mai* and the *MEC* cases) determined the literal scope and meaning of the claim term "longitudinal groove adapted to cooperatively receive a respective pair of said header rails." Ex. D and Ex. F.

18. The prior Markman Rulings do not limit the range of equivalents that the claim terms may have under the doctrine of equivalents. Ex. E and Ex. F.

19. The court in the *Ro-Mai* Markman Ruling expressly recognized that the claim interpretation is restricted to the *literal* scope and meaning of the limitation, rather than a determination of infringement by equivalents. Ex. F.

20. The court stated in the *Ro-Mai* Markman Ruling (Ex. F):

- "*literally speaking*, a groove is not created where there is no projection to create the groove" Ex. F, p. 12 (emphasis added)

- "The Court finds that Ashland's proposed construction [regarding the term "groove"] would extend the patent beyond *the literal* scope,. . ." *Id*. at p. 12 (emphasis added)

- "it is the projections themselves (and not the gaps between them) that *literally* create the groove" *Id*. at p. 13 (emphasis added)

4

21.	The Ro-Mai latch, referenced in the *Ro-Mai* Markman Ruling does not cooperate with the sidewall tab to receive and engage a header rail along the length of the tilt latch. *Id.* Ex. F, *Ro-Mai* Ruling, p. 3.

22.	The statement in the prior Markman Ruling that "the benefits of the patented design can be gained from a non-continuous wall, as along as the walls are significantly longer than the flare tabs of the prior art Ro-Mai design" is not a statement found in the claim construction at the conclusion of each Markman Ruling. Ex. E and Ex. F.

**Vision's Violation of the Settlement Agreement**

23.	Paragraph 2 of the parties' Settlement Agreement prohibits Vision from making, using, selling, offering to sell, advertising, distributing in the United States tilt latch products having "a sidewall structure" as shown in Exhibit B of the Settlement Agreement. Ex. B, Settlement Agreement, at pp. 2 and 7-8.

24.	Simultaneous with the Settlement Agreement, the parties entered into a License Agreement that permitted Vision to market and sell a particular tilt latch design in exchange for payment of a royalty to Newell. Ex. B; Ex. C, Ex. D, par. 3.

25.	Based on representations made by Vision during settlement negotiations, Newell was led to believe that Vision would only market and sell products as depicted in the License Agreement, and that Vision would not market or sell products having a significantly-extended sidewall tab as shown in the several Prohibited Proposed Assemblies of the Settlement Agreement. Ex. D, Rudd Affidavit, at ¶ 7.

26. It was not the intent of the parties to have Paragraph 2 of the Settlement Agreement be limited to the exact construction of products shown in Attachment B of the Settlement Agreement. Ex. D, Rudd Affidavit, at ¶ 8.

27. Newell intended for the terms of the Settlement Agreement to prohibit Vision from marketing any tilt latch with a sidewall construction similar to what was shown in the Settlement Agreement. Ex. D, Rudd Affidavit, at ¶ 8.

28. After the parties' entered into the Settlement Agreement, Vision continued to advertise images of tilt latches prohibited under the Settlement Agreement, shown on the left of the image below.



29. Vision's web site "product catalog" contained images of tilt latches that are identical to a "prohibited proposed assembly" of Attachment B to the Settlement Agreement. Ex. B; Ex. M.

30. Prior to the parties signing the Settlement Agreement, Vision was working with its supplier to create a new tilt latch design, which became the design for its Model 2600 products. Ex. I; Ex. J.

31. Vision's use of images on its web site, showing products nearly identical to an image within Attachment B of the Settlement Agreement was a violation of Paragraph 2 of the Agreement. Ex. B; Ex. M.

32. The images of tilt latch products from Vision's web site showing latch products prohibited by the Settlement Agreement purportedly depicted Vision product Model Nos. 2681L, 2681R and 2691R. Ex. M; Ex. B.

33. At the time of negotiating the Settlement Agreement with Newell, Vision knew it planned to introduce into the market a tilt latch product that differed in sidewall structure from that which Vision then disclosed to Newell. Ex. U; Ex. O.

Respectfully submitted,

Dated: February 16, 2009       By /s/ Bradley F. Rademaker
                                  Bradley F. Rademaker
                                     *brademaker@bannerwitcoff.com*
                                  Jason S. Shull
                                     *jshull@bannerwitcoff.com*
                                  Michael L. Krashin
                                     *mkrashin@bannerwitcoff.com*
                                  Aseet Patel
                                     *apatel@bannerwitcoff.com*
                                  BANNER & WITCOFF, LTD.
                                  10 South Wacker Drive, Suite 3000
                                  Chicago, IL 60606
                                  Telephone: 312-463-5000
                                  Facsimile: 312-463-5001

                                  *Attorneys for Plaintiff/Counterclaim-Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2009, a true and correct copy of the foregoing **NEWELL'S STATEMENT OF FACTS IN OPPOSITION TO VISION'S MOTION FOR SUMMARY JUDGMENT** was caused to be served via the Court's ECF filing system to the following counsel:

>Raymond N. Nimrod
>Jonathan Hill
>JENNER & BLOCK LLP
>330 N. Wabash Avenue
>Chicago, IL 60611
>Telephone: 312-222-9350
>Facsimile: 312-527-0484
>*rnimrod@jenner.com*
>*jhill@jenner.com*
>
>Mark D. Roth
>ORUM & ROTH, LLC
>53 West Jackson Blvd.
> Chicago, IL  60604
>Telephone: 312-922-6262
>Facsimile: 312-922-7747
>*markdroth@gmail.com*

>/s/ Bradley F. Rademaker
>*One of the Attorneys for Plaintiff/*
>*Counterclaim-Defendant*

13558812